In Re CSB-System International, Inc. Mr. Koch. Good morning. May it please the Court, my name is Bruce Koch on behalf of Appellant CSB-System International. This is an appeal from a re-examination where they found, affirmed the invalidity findings. We believe that there are at least three main legal errors committed by the PTO in its 102-103 invalidity analysis. First, we believe they failed to consider that this is a system claim to a specific type of architecture. Two, their claim constructions are not supported by evidence and in fact contradicted by the contemporaneous evidence of the prior art itself. And three, the use of the Broadest Reasonable Interpretation standard instead of the Phillips standard since the underlying patent expired during the re-examination. Now turning to the first main legal error, this claim one was to a system claim, a specific system claim to integrate an EDP and telephone system to allow the customer service representative to receive the customer information at his computer when the call arrives. Now this is a specific architecture listed in claim one of the patent. It has a server and a client and a person of ordinary skill in the art viewing this would see that this is clearly a client-server architecture. So the relevant question for the 102 and 103 is does the prior art references alone or in claim one the specific client-server architecture? Now looking at the prior art references, Gursahani and the call coordinator, they have a host to a terminal system. A person of ordinary skill in the art in 1993 would clearly see this as a host terminal architecture, a different and discrete architecture than described in claim one of the patent. What is it that you think in claim one limits this to a client-server architecture? Sure. It's a good question. The fact that there's a server and personal computers receiving and sending data records. As this court recently reiterated in the Apple versus Samsung case that the mention of a client-server relationship. It was citing the Apple versus Motorola case 757 Fed Third 304. So to a person of ordinary skill in the art seeing claim one, they would see a client-server architecture. Now when you're looking at the prior art of Gursahani and call coordinator, as I said, it's a host terminal architecture. And how do we know that? Well, the prior art itself states that. Gursahani clearly has many passages stating that in this invention is a host computer communicating through screen images to a terminal, a functioning terminal. But what evidence did you present that the terminals in the prior art reference can't be considered personal computers? Because if you look at Gursahani itself, the prior art author himself refers to these workstations converted into terminals as terminals. He states that the flow information is to the terminal, from the terminal, and he states that the invention, in the invention, the host computer must interface with a terminal, with a 3270 or 5280 terminal. So in his mind, and he states it explicitly, this is a host terminal architecture. He does not, he does not, it shows that he does not believe that he was in possession of a client-server architecture for this integrated EDP and telephone system. So I think that's the best evidence. You articulate, this claim articulates personal computers, and then it articulates a LAN server. If the terminals in the prior art reference perform all the functions that the claim requires of personal computers, and the host performs all the functions as the LAN server, as only limited in the claims, because of course we're not going to import functions or objectives from the specification into the claim. So if the disclosure in the prior art reference has a terminal computer that can, for example, send and receive and all of that other stuff that is required by this claim, then why is it not anticipatory? Why does the simple context of host versus client-server matter if all of the elements of the claim are identically performed by the structures disclosed in the prior art reference? I'm glad you asked that question. I believe the answer is, one, a person of ordinary skill in the art in 1993 would believe that these are not the same architectures. You say that, but I can't find any evidence in the record that you submitted that would have made it implausible, improper, or even worse, I've got to give substantial evidence to the board's findings. So what evidence of record is there other than your personal statement as attorney argument to establish that? Sure. As I said, the statements by Mr. Gersahani himself in his patent where he refers to these terminals as terminals. And also if you look... He just refers to them as terminals, but he also discusses later on that they're capable of sending and receiving. He also has at column 16, he says they have a multitasking operating system. That's true. But when you look at the relevant legal question is, in the system, what is the nature of that component? No, I don't think it's what's the nature of that component. I think the question is, does that component meet all of the elements of the claim? We don't do some general analysis, right? We've got a claim. The claim articulates certain functions a personal computer must perform, certain structures it must have, whatever. And I don't think that... What I'm having trouble seeing is how the prior art doesn't actually meet each of these limitations, even though it calls itself a terminal rather than a personal computer. And your answer, as I understand it, is, well, one of Skilner understands these things to be different. But the fact that they have differences that are irrelevant to the claim limitations doesn't seem to me to... If you look at the glossary of the COAL coordinator, if you look at 4962 and 4963, you'll see that that has discrete definitions for host computer versus server. So at that time, a person would not believe that a host computer was equivalent to a server. And the other thing I would like to point out, I don't believe that there is a doctrine of equivalence in validity analysis, which I believe is what is kind of morphing into. It's what a person of ordinary skill in the art would believe this to be. And there's a different flow of logic in a client-server versus a host-terminal relationship. But that's not in this record. You're saying these things, and you know what? I know that they're true, because I'm an electrical engineer at heart, but none of that is in this record. There is no expert that said this in this case. There are no documents that you can point me to in this record that can establish, beyond the substantial evidence standard that I've got to give deference to the board for, that the arguments you're making as an attorney are factually, unequivocally correct, and that no conclusion to the contrary would be supported by substantial evidence. That's my problem with this case. First, I would like to point out that the board itself has no evidence at all about that a person of ordinary skill in the art would believe that a host computer is equivalent to a LAN server, and that a term functioning terminal is the same as a personal computer in the system. So to put time out, as Judge Stoll pointed out, the prior art reference discloses what this terminal contains in the way of architecture, and the prior art reference discloses what this structure is capable of doing in the way of functionality, sending and receiving. At that point in time, the terminal as disclosed in the prior art reference doesn't seem to me to be distinguishable from a personal computer in any meaningful sense. So why is there no substantial evidence for that board conclusion? Well, I believe it's back to what the prior art author says. He refers to these as terminals, and I think you can safely say that if it was just a plain terminal and not a personal computer converted to terminal, it would definitely be different in the eyes of a person of ordinary skill in the art. But what's missing is, for example, evidence on your part that people of skill in the art understood terminals to differ from personal computers. You're just pointing to the fact that two different words happen to be used, but the evidentiary link that's missing is that those two different words would convey to one of skill in the art the idea of very different non-equivalent structures. Sure. But I don't think the board itself has connected that structure either, it hasn't provided any evidence either. And they had the initial burden of production and the burden of persuasion on that issue, and I think as a threshold matter, they didn't prove it either. And I, contrary, I both respectively disagree. I believe that the fact that the prior art glossaries themselves have distinct definitions, discrete definitions, show it. And also I think to a person of ordinary skill in the art, this is inherent. This is inherently different architecture that a person of ordinary skill in the art would readily understand. I know, but you can't just say it. I can't say it. There's a record for it. And I come back to what the prior author himself, if in fact in the Gursahani, there's no mention of server at all. Host is mentioned 613 times and server is never mentioned. And when he talks about the invention, he says the invention is a host computer that must interface with a term. And you've got to realize at this time, the historical time, there was all these host terminal legacy systems, but the manufacturers had stopped making the hardware terminals, so they needed to create a terminal out of something so that they could keep these host terminal legacy systems operating. So that's why they had a terminal emulation. And further, I think... Is there record evidence of any... Well, you look at the definition of terminal emulation that's in the record. It states... Where can I find that definition? Sure. Take me directly to it. It's probably around 4959 or somewhere in thereabouts, I think. I haven't found it yet. Sure. Well, perhaps you can find... Yeah, I'll find that on rebuttal, I believe. But I just want to point out, I think, just as a threshold matter, I know you, Your Honor, has said that we haven't had the linking information, but I don't think, as a threshold matter, the Board has presented any evidence to conclude on these claim constructions that a person of ordinary skill in the art in 1993 would believe that the system described in those two prior art references read on a client-server architecture of the system. And I just want to point out that the relevant issue for 102-103 is the claim system in the prior art. That is the threshold thing. Thank you. Okay. Thank you, Mr. Cook. Mr. Hellman. Thank you very much, Your Honor. May it please the Court. The Board correctly construed the terms personal computer and LAN server in Claim 1. With respect to personal computer, the Board came to the common-sense conclusion that a personal computer is defined by the hardware it contains and not by the program that it's running at the time. And the Board held that the prior art, which explicitly disclosed a personal computer or disclosed something that had all the hallmarks of a personal computer, fulfilled that limitation. But this is a re-examination. That's correct. So the burden is on the office, not on the petitioner for re-examination. So isn't there more of a burden not to just say, well, it is because I say it is, but to provide the foundation for the position on which the previously allowed claim now presented for re-examination is no longer allowable? Your Honor, I think the burden is exactly the same as the first time around. Exactly. Exactly. And that's my question. And I think that the Board certainly came forward with more than enough. I'm not exactly clear why the term personal computer requires a construction. I think it has a plain meaning that's very well known in the art. I think we interact with personal computers on a daily basis. And certainly even in 1983 we did. Unless the applicant, now the patentee, raises the issue and says that you construe it one way and I'm home free in another way, and there's an obstacle. That's correct, Your Honor. And so the argument that was presented was that when the personal computer starts running a program, the program is called Terminal Emulation Program, it's a way for the personal computer to communicate with another computer on a network, which incidentally is exactly what's claimed. So when it starts running that program, does it suddenly transform from something other than a personal computer? Does it suddenly transform fundamentally into a different device? And the answer is no. The prior art is clear that it clearly calls, for example, the IBM guides. It says we use personal computers in this system. They run a Terminal Emulation Program in order to affect this communication. So I think that's pretty good evidence that one skill in the art would understand that a personal computer running a program doesn't change. It doesn't change its status as a personal computer. So I'm not sure. I hope that's addressing your question or addressing what you're asking. Well, what I'm trying to explore and really what I'm trying to think about is that here we have the action in the office. It's not before a district court. So we have experts on each side. And to understand at which point additional support for the rejection is required because the inventor himself is an expert, says, no, this means something different. I understand what you're saying. I see what you're saying. Actually, I believe the testimony, there was testimony given by Mr. Gersaheny. I may be pronouncing that incorrectly. But there was testimony from him. And his testimony was this is exactly the type of architecture that we understood to be claimed. This reads on those claims. So his testimony was in both the IBM guides and in his own patent. His testimony was this is what we understood at the time to be involved in that type of architecture, the type of claimed architecture. Yes, it was 20 years ago. It was quite a long, more than 20 years ago. I think the relevant date was 93. So it's more than 20 years ago. And at the time, we use computers for an amazing amount of things now. And our interaction with things over a network is fundamentally different than it was in 1993. 1993 was at the very beginning of web browsers. So really before that time, we were dialing up into AOL, but the type of terminal communication systems that were described in the prior art and used in the prior art. Those were how computers communicated with each other at that point in time. That was how people could get access from one computer to another. Now, I believe, like as I said, if this is something that was so special, the specific architecture, the client-server architecture, if it was so special to distinguish this piece of this patent from the prior art, which otherwise discloses a system that is essentially identical in arrangement, you would expect the patent to mention a client or to claim a client as opposed to just claiming a piece of hardware, which is what a server is. So you could, in 1993, you would not go on the Internet. You would go to your catalog. You'd look it up. You would order a server from IBM. And it would come in a box. And you'd take it out, and you'd set it up with your personal computers and your local area network.  And I believe that's what's claimed. And I think that's what the board concluded. Well, one of the arguments presented in this case has to do with what the proper standard that ought to have been applied to this patent is, namely the examiner-applied BRI, which looks like the correct standard because, well, I don't think it's the correct standard. But under the law, it appears to be the correct standard. Yes, Your Honor. Because the patent had not expired at the time the examiner was reviewing it. That's correct, Your Honor. Then by the time it got to the board, the patent was expired. That's correct. So at that point, shouldn't the standard have morphed into Phillips since the patent was still within the PTO under the executive office adjudication process? I realize it's odd to say the board is reviewing the examiner, but at that point, is it really entitled to review the examiner using the wrong standard given that the patent expired? Well, under our rules, the examiner carries out the reexamination, and then there's an appeal to the board, and the board reviews, again, under our rules. But this is all just part of the executive branch's resolution of this issue. And what we held in Rambis is that if a patent expires, you all have to use Phillips. You don't get to use it. And isn't it true that in Rambis the exact same facts were present? In Rambis, as I read, the exact same facts. The patent had not expired while it was in front of the examiner. It wasn't until it was before the board. And nonetheless, we held, nope, you should have used the Phillips standard. So I think there's one very, very important distinction between Rambis and this case, and that's that in Rambis the board issued a new grounds of rejection, which reopened the prosecution. So if the board had done that in this case, then absolutely they should have used Phillips in their attendant claim construction. Whereas in Rambis what happened was the board got the examiner's rejection, considered it, did not like it, issued a new grounds of rejection. And so in that case under our rules. Did it go back to the examiner at that point? It did not. But that was essentially a reopening of prosecution. Under our rules that reopens, gives the opportunity to reopen prosecution, make further amendments. So they could have gone back to the examiner. They could have gone back to the examiner. They could have gone to defiance. Well, they couldn't because the patent was expired, which is why they had to apply Phillips. So at that point, so if in this case there had been a new grounds of rejection, absolutely, then Phillips would apply. But that's because the board was not in Rambis. The board was not actually reviewing the examiner's rejection. At that point they were acting, they were stepping into the shoes of the examiner and acting as a sort of, you know, a super examiner in that case and making their own rejection. And under those circumstances, absolutely Phillips would apply. And that's what the court correctly held. In Rambis, what standard did the board apply for the claim construction? I don't recall that the board explicitly said whether they were applying BRI or Phillips. I just, I don't recall. They may have said that. I just don't recall. But certainly this court applied Phillips in their review of it. I'm unaware of any case where the patent expired and without a new grounds of rejection, the board should have had the obligation, the affirmative obligation to then enter a new grounds of rejection. So essentially that would be what the board would have to do in this case. They can't just, they can't review the examiner's decision. They would have to enter in a new grounds. Why not? Why can't they review it and say under either standard the result would be the same? Why does that, does that constitute a new ground of rejection? Possibly. I mean it may because they're going to make a factual finding based upon a narrow construction. They could. No, no, no. You're saying it's a narrow construction. That was an assumption. Yes, that's an assumption. Not every BRI and claim construction under Phillips would be different. Sometimes they would be identical. Absolutely. So if the claim, why couldn't, and I think that may actually be the case here. I agree. I was about to say that. Why then couldn't the board have said, well, since the patent's expired, we're now in a Phillips world. But since the construction is identical, it changes nothing. And that's as a matter of law. You know, there's no facts that need to be taken into account to reach that conclusion. And so there's sort of no harm, no foul. I think if there's no new factual finding that the board undertakes, I think they could put that, I think they could do that. And I actually think that they did something along those lines here. I think the examiner did as well with the board considering when the examiner's, the examiner's rejection, the examiner's fact finding. Because what the board did says, did was they said, you know, we agree with what the examiner said for their claim constructions. We're also going to look at what the district court did. They considered what the district court did when they construed the claims, which is always nice when the board does that, right? Something they may have been counseled to do in the past. Yeah. Well, unfortunately, that counsel may have come after this board opinion. But they maybe anticipated. So it's something that is good to do. And they made the factual finding. They said, for example, with respect to the land survey, they said, well, let's look and see what these, what the hallmarks are in the claim construction that the district court gave. And it looked and it found that these systems, the systems disclosed in the prior act had those hallmarks. Did they respond to requests? Did they meet these limitations, the limitations in the claim construction? They said yes. So if when this came to the board on appeal and it looked to the board as if with further amendment, the core of what had been invented could be handled, what would the board do? Would you remand back to the examiner for further examination? If the board disagreed with what the examiner did, then it would be they could either enter new grounds or they could reverse the rejection. So reverse the rejection rather than send it for further examination. Your Honor, I'm not exactly sure what happened in this case because since the patent was expired at the time, I'm not sure that there's any, it makes any difference to send it back to the examiner. Maybe they could have sent it back to the examiner. Because that's the issue that I really wanted to raise because it did expire. And we know that the rule is that when it's expired so that amendment is no longer available, neither is BRI to be applied. But they go together. And if BRI continues to be applied on appeal, even though the patent is expired, one would think that amendment would still be available in order to, again, bring out what was actually invented in the interest of the inventor. So now it gets more and more complicated. Yes, I think I see your point. And my response, Your Honor, is that the patentee had every opportunity when they were before the examiner to make the amendments necessary to convey patentability over these what appear to be very strong prior references. I think there may have been problems putting in the type of limitations that they're arguing are somehow inherently present or should be inserted into the claim. There may be written description problems with making those amendments because I don't see any description for those in the specification of claims. Setting aside those issues, setting aside issues of why they chose not to put that language into their claims, once it gets to the board and the patent's expired, if the board says, we think we disagree with the examiner, after that point, whatever further prosecution takes place or whatever further rejections take place because it's no longer a review of the examiner's decision, that will have to be conducted under Phillips. Can I ask you a technical question? Yes, Your Honor. Going back to the technology. So the prior art, Gershtani? Yes, Your Honor. Is it your view that it discloses, in fact, a personal computer? It's just that that meaning all of the structure that anyone would think of as encapsulating a personal computer, a microprocessor, a screen, a hard drive, a computer, whatever the structures are that meet the definition of personal computer, is it the opposite position that all of those structures were present in what is being referred to as a terminal in Gershtani? It's just that it was running a particular program that had it function for that purpose as a terminal, but nonetheless it had all of the structural elements of a personal computer? Yes, Your Honor, that's correct. And just to be clear, I think that in addition to referring to the system, talking about terminals, it also refers to these as workstations. And at the time, maybe we don't use that term as much now, but at the time, these computers that were attached to local area networks, at least I fear I'm using my own recollection here, we often call those workstations. Well, yeah, I was going to argue the same thing that I thought he was doing, which is even if you're correct and I were to agree with your recollection, it probably isn't – I don't think that's in the record. Yes, you're absolutely right, Your Honor. And as I said, it's just my – that's just – Okay, move on then. But absolutely, what they do, they certainly do disclose that the – what they call a workstation, they disclose that those workstations have all of the hallmarks of what we would expect a personal computer, including the fact that they are IBM PS2s, which was IBM's personal computer at the time. That was what I – Where are you looking at that? So let me see. I have – Figure 53 – figure 5327, figure one at Gershwani. Yes, all the figures at Gershwani show that. And then also in the text of the – at 5355, column 15 lines, let me see, 28 to 29. So that says the workstation 100 can be an IBM PS2 model 80, for example. And that is, in fact, a personal computer. Yes, that is the personal computer that IBM sold at the time, or one of the personal computers that IBM sold at the time. And so – and then they go on after that to discuss very specific aspects. What is that column line number? What does that mean? That was at 15, line 28, 29. And then at column 16, lines 6 to 8, they talk about that it has memory in the workstation. It has a multitasking operating system, which is the OS2 Extended Edition by IBM. And they go on. And so to talk further about the workstations. So, and again, when they're talking about terminals, suppose that this reference maybe discloses more than just the type of system that's claimed. Because when they're talking about terminals, there's an alternative, and this is what Mr. Gershwani said in the district court litigation. He said there's more than just – there's more than just – I'm sorry, I'm over my time. If I could just – is it over? No, finish the thought. There's more than just terminal. There's terminals interacting with mainframes. And then we also have this type of system, which is personal computers interacting with a server. And so he was saying that that type of personal computer interacting with a server, that's the type of architecture that they were going for, especially the IBM guys. Do you have any more questions? No, thank you. Thank you. Okay. Well, thank you, Mr. Helm. Mr. Cook. Thank you. Just a few points, and I'll be brief. First of all, what he said about Mr. Gershwani and saying that in his patent is a server communicating with a PC, that's not – the contemporaneous evidence, which is his own patent, totally contradicts him. Server is never mentioned in his patent. There's nothing in it where personal computers are sending and receiving any type of information as personal computers. It is undisputed that in the system of Gershwani, host computers exchange menu images with workstations functioning as terminals. And when you take a look at what the analysis has to be in 102, 103, you have to find the system in the system of Claim 1 in Mr. Gershwani. The system of Claim 1 has a server and personal computers, and the personal computers are not just sitting doing nothing. They're sending and receiving data records as personal computers. And it's just – in Gershwani, he refers to them as terminals. And to say that Mr. Gershwani conceived and enabled the invention of Claim 1 seems – doesn't seem to be supported by any evidence. And you heard them. They haven't been able to point to any evidence even – and his argument he hasn't pointed to any evidence. Now, on the flip side, as you said, Mr. Gershwani's own patent, he himself refers to these workstations as terminals, and information is sent to the terminal and from the terminal. And then you look at the definition of terminal emulation at A911A. It talks about the terminal emulation makes – Well, he refers to them as terminals, but doesn't he also refer to them as workstations? Workstations, but if you look at the – this is not a record, but if you look at the IBM – it might be in one of the glossaries, but if you look at the definition of workstation is a terminal with a human in the IBM references. But no, but he defines it. Gershwani defines it in the reference. He doesn't define it as a human. He defines it as the Workstation 100 can be an IBM PS-2 Model 80, for example. Yes, it can start out as a personal computer. It's not a personal computer. It starts out as a personal computer, but when you look at it from the perspective of the system, it is a terminal. It's been converted into a terminal in the system, and that is the relevant legal question. In the system, what is the nature of that component? In this system, Mr. Gershwani clearly says his are terminals, and they function as terminals, and they receive and send screen images as terminals, whereas in contrast, Claim 1, the personal computers are sending and receiving data records as personal computers. And even if you take a look at the – just not the personal computer terminal issue, there's the LAN server issue and the host computer. If you look at the IBM glossaries, there's discrete definitions of these things, and even the IBM definition. Host computer is the controlling or main computer in an architecture where the definite server says it serves other components in the system, which are clients. In this case, the personal computer. So when you take a look at the system as a whole and not just parsing individual components, it's clear that Gershwani and the call coordinator does not show the system of Claim 1. And as I said, we can point to the evidence of record is Mr. Gershwani himself referring to these as terminals. The IBM glossary, for instance, 4962 and 4963 with discrete definitions of host computer and server and the definition of terminal emulation. And you can look at the call coordinator 4306 where it says the host computer communicates by sending screen images via terminal emulation. And we believe that the terminal emulation turns a personal computer into a terminal in the system. Now, going back to BRI, I think their distinction about – the RAMBIS case, the distinction without a distinction. The court did not make a distinction saying it was because it was sent back. In fact, I think that actually cuts against them. The fact that they were given an additional opportunity to amend the claims and they still used – said Philips had to apply actually cuts against them. I believe that, in this case, Philips should have been used because the patent had expired. And I just think a person of ordinary skill in the art looking at the prior art and the Claim 1 would not believe that Mr. Kursahani was in possession of the client-server system of Claim 1. And we know the Claim 1 is a client-server. I mean, a person of ordinary skill in the art, it's inherent. When they see a server, they see a client-server relationship. And I think this court reiterated that in the Apple-Samsung case a couple weeks ago. And that's all I had. Thank you. Any more questions? Okay, thank you. Thank you both. The case is taken under submission.